J-A02009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.L.H. | : | |
| | : | |
| Appellant | : | No. 677 WDA 2020 |

Appeal from the Order Entered June 12, 2020
In the Court of Common Pleas of Butler County Civil Division at No(s):
FC11-90307-C

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: MARCH 11, 2021**

J.L.H. ("Father") appeals from the child custody order entered June 12, 2020, which modified the prior order regarding his daughter, R.M., born in July 2006.  After careful review, we affirm.

R.M. is the daughter of Father and A.M. ("Mother").  Our review of the certified record indicates that Father and Mother were not married at the time of R.M.'s birth, but does not reveal anything else about their relationship. Since October 16, 2015, Father exercised primary physical custody, and the parties shared legal custody.  Mother was granted partial physical custody every Tuesday after school until 8:00 p.m. and on alternating weekends from Friday after school until Sunday at 6:00 p.m.  The order did not provide a summer schedule but stated that the trial court would draft a summer schedule on motion of either party.  Significant to the issues presented in this appeal, the custody order included a provision forbidding Mother's boyfriend,

J.K. ("Boyfriend"), from being present during Mother's custodial periods due to his drug addiction.

On July 23, 2019, Mother filed a petition to modify the October 16, 2015 custody order.  She initially sought primary physical custody of R.M, but later moderated her position and requested increased partial physical custody during the school year and shared physical custody during the summer.  She also requested that the trial court remove the provision forbidding Boyfriend from being present during her periods of custody.

Subsequently, on November 15, 2019, Father filed a petition for contempt alleging that Mother was berating R.M. and making critical comments to R.M. about Father.  On January 28, 2020, the court combined the petitions for disposition, directed Mother to provide Father's counsel certain documents, and granted Mother overnight custody with R.M. each Tuesday if she provided the documents within thirty days.[1]  On March 5, 2020, Father filed an affidavit averring that Mother had not complied.

Prior to the custody hearing, the parties agreed to maintain the existing custody arrangement largely unchanged, except that Mother's weekend custody would be extended by thirty minutes.  The parties also decided that Mother would exercise expanded partial physical custody during the summer

---

[1] The order directed that Mother provide (1) proof that she and Boyfriend had an ownership interest in the home where they resided together, (2) her work schedule, (3) documentation relating to Boyfriend's hospitalization in 2018, and (4) documentation showing that Boyfriend completed a drug treatment program related to his Driving Under the Influence ("DUI") arrest in 2017.

and that Father would withdraw his petition for contempt. On June 12, 2020, the court entered the custody agreement as an order.

Although the parties were able to resolve the majority of their custody dispute amicably, they remained in disagreement regarding whether Boyfriend could be present when Mother exercised custody. Thus, the trial court held a hearing to address this limited issue. Mother, Boyfriend, and Father testified at the hearing. Mother provided the bulk of the relevant testimony, which focused on Boyfriend's progress toward addressing his drug addiction. Mother testified that she broke up with Boyfriend in June 2017 because of his drug addiction and "some altercations" during which he pushed or shoved her. N.T., 6/11/20, at 6-7, 12. Mother rekindled her relationship with Boyfriend in 2018, after he was the victim of an assault resulting in his hospitalization.[2] *Id*. at 6.

Mother did not dispute that Boyfriend remained in the throes of addiction at the time of the assault. *Id*. at 26-27. However, she insisted that Boyfriend had "done a complete 180" since his discharge from the hospital in May 2018. *Id*. at 9-10. Mother maintained that she was not aware of Boyfriend using illegal drugs since the spring of 2018. *Id*. at 9. Moreover, she explained that she had lived with Boyfriend for about a year at the time of the hearing, and that he had not exhibited any "anger issues" or become physically aggressive.

---

[2] Mother added that Boyfriend was diagnosed with a brain tumor at or near that time. N.T., 6/11/20, at 7-8. Boyfriend testified that he had surgery to address the brain tumor and now experiences short-term memory loss. *Id*. at 44.

*Id*. at 11-12. She also explained that she complied with the prior custody order prohibiting Boyfriend from being present during her periods of custody by exercising custody at the home of the maternal grandparents. *Id*. at 11, 36-37.

Despite Boyfriend's history of drug addition, Mother testified that he was not currently receiving addiction counseling. *Id*. at 28. She also conceded that she was not taking any precautions to protect against a possible relapse. *Id*. at 31-32. Mother explained, "[Boyfriend] is a man of his own caliber and his own decision. [Boyfriend] makes the decision every morning to stay up and be sober. . . . I am not in control of his or anyone's addiction." *Id*. at 32. She indicated that Boyfriend's efforts at maintaining sobriety included going "to some meetings in the past" and being involved "lightly" with a "center where they can go for . . . meetings and community and play pool." *Id*. at 28. Mother added that Boyfriend would be undergoing a drug evaluation, which could result in additional services, and urine screens as part of the five years of probation he received for a 2017 DUI. *Id*. 19, 28, 33, 75-76.

At the conclusion of the hearing, the trial court announced that it would allow Boyfriend to be present during Mother's custody time, subject to certain limitations.[3] The next day, on June 12, 2020, the court entered an order

---

[3] The trial court also reprimanded Mother for failing to comply satisfactorily with its January 28, 2020 order directing her to provide Father's counsel with certain documents. N.T., 6/11/20, at 71, 80.

outlining when Boyfriend's presence was permitted.[4]  The order also directed

Boyfriend to submit to two hair follicle drug screens, one within ten days of

the date of the order, and one within no fewer than eighty and no more than

ninety days of the date of the order, with the results provided to Father's

counsel.  Father timely filed a motion for reconsideration, notice of appeal,

and concise statement of errors complained of on appeal on July 8, 2020.  The

court did not rule on Father's motion for reconsideration.[5]

Father presents the following questions for our review:

I. Did the [trial c]ourt abuse its discretion and/or misapply the law
in failing to undertake the required risk assessment outlined in 23
Pa.C.S. § 5329 which provides: "...the court shall consider such
conduct and determine that the party does not pose a threat of
harm to the child before making any order of custody..."?

---

[4] Specifically, Boyfriend was permitted to be present each Tuesday during the
school year from the beginning of Mother's period of custody until 8:00 p.m.
During the summer, the order provided that Boyfriend could be present each
Tuesday after Mother's weekends from noon until 8:00 p.m., and each
Tuesday after Father's weekends from 6:30 p.m. until 9:00 p.m.  The order
also provided that Boyfriend could be present for one overnight period during
each of Mother's weekends, beginning with Mother's first weekend in August
2020.

[5] We observe that the order on appeal included a provision scheduling a status
conference for October 2020.  The existence of this status conference did not
render the order interlocutory.  A custody order is final and appealable "if it is
both: 1) entered after the court has completed its hearings on the merits; and
2) intended by the court to constitute a complete resolution of the custody
claims pending between the parties."  **G.B. v. M.M.B.**, 670 A.2d 714, 720
(Pa.Super. 1996).  In the matter at bar, the trial court scheduled no further
substantive hearings after June 11, 2020, and its order resolved all custody
claims pending between the parties.  We conclude, therefore, that the order
was final and that we possess jurisdiction to review this appeal.

II. Did the [trial c]ourt abuse its discretion and/or misapply the law in failing to undertake the required risk assessment outlined in 23 Pa.C.S. § 5330 which provides: "...In evaluating any request under subsection (a), the court shall consider whether the party who is or has been charged with an offense set forth in section 5329(a) poses a risk of physical, emotional or psychological harm to the child..."?

III. Did the [trial c]ourt abuse its discretion and/or misapply the law in failing to consider the mandates of 23 Pa.C.S. [§] 5328(a)(7), which provides: "in ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors... including the following": (7) "the well-reasoned preference of the child, based on the child's maturity and judgment"?

Father's brief at 11-12 (emphases omitted).

We consider Father's claims mindful of the following standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted).

Before beginning our review, we briefly address the defective presentation of Father's claims on appeal. While Father includes three claims in his statement of questions involved, he combines them all into a single argument section in his brief in contravention of our Rules of Appellate

Procedure. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein[.]"). However, because Father's noncompliance with Rule 2119(a) does not hinder our ability to conduct meaningful appellate review, we address his claims on the merits. **Cf.** Pa.R.A.P. 2101 ("[I]f the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

We begin with Father's interrelated first and second claims, in which he contends that the trial court erred in failing to consider whether Boyfriend poses a risk of harm to R.M. Father's brief at 19-21. Father directs this Court's attention to § 5329 of the child custody law, which provides as follows, in relevant part:

> **(a) Offenses.--**Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty or no contest to any of the offenses in this section or an offense in another jurisdiction substantially equivalent to any of the offenses in this section. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that party when considering the following offenses:
>
>     . . . .
>
> 75 Pa.C.S. Ch. 38 (relating to driving after imbibing alcohol or utilizing drugs).
>
>     . . . .
>
> **(c) Initial evaluation.--**At the initial in-person contact with the court, the judge, conference officer or other appointed individual

- 7 -

shall perform an initial evaluation to determine whether the party or household member who committed an offense under subsection (a) poses a threat to the child and whether counseling is necessary. The initial evaluation shall not be conducted by a mental health professional. After the initial evaluation, the court may order further evaluation or counseling by a mental health professional if the court determines it is necessary.

**(d) Counseling.—**

(1) Where the court determines under subsection (c) that counseling is necessary, it shall appoint a qualified professional specializing in treatment relating to the particular offense to provide counseling to the offending individual.

(2) Counseling may include a program of treatment or individual therapy designed to rehabilitate the offending individual which addresses, but is not limited to, issues regarding physical and sexual abuse, the psychology of the offender and the effects of the offense on the victim.

**(e) Subsequent evaluation.—**

(1) At any time during or subsequent to the counseling under subsection (d), the court may require another evaluation to determine whether further counseling is necessary.

(2) If the court awards custody to a party who committed an offense under subsection (a) or who shares a household with an individual who committed an offense under subsection (a), the court may require subsequent evaluations on the rehabilitation of the offending individual and the well-being of the child subsequent to the order. If, upon review of a subsequent evaluation, the court determines that the offending individual poses a threat of physical, emotional or psychological harm to the child, the court may schedule a hearing to modify the custody order.

23 Pa.C.S. § 5329(a)-(e).

Father interprets § 5329 as being the first of two interworking statutory provisions that a trial court must apply when conducting a risk evaluation. Father argues that 23 Pa.C.S. § 5330 is the second of these provisions, which "outline[s]" the evaluation that § 5329 requires. Father's brief at 20-21. The relevant portion of this section provides as follows:

> **(a) Expedited hearing.--**A party who has obtained information under 42 Pa.C.S. § 1904 (relating to availability of criminal charge information in child custody proceedings) or otherwise about a charge filed against the other party for an offense listed under section 5329(a) (relating to consideration of criminal conviction) may move for a temporary custody order or modification of an existing custody order. The court shall hold the hearing under this subsection in an expeditious manner.
>
> **(b) Risk of harm.--**In evaluating any request under subsection (a), the court shall consider whether the party who is or has been charged with an offense set forth in section 5329(a) poses a risk of physical, emotional or psychological harm to the child.

23 Pa.C.S. § 5330(a)-(b).

Father is mistaken in his interpretation of our custody statute. First, § 5329 applies only "[w]here a party seeks any form of custody[.]" 23 Pa.C.S. § 5329(a). This Court has interpreted the words "form of custody" to refer to the seven custody awards enumerated at 23 Pa.C.S. § 5323(a), which include primary physical custody, partial physical custody, and shared legal custody, among others. *S.W.D.*, *supra* at 402. In this case, the trial court was not considering whether to award or modify a form of custody, but was deciding the "discrete and ancillary" issue of whether Boyfriend could be present during Mother's custody time. *See id*. at 402 (discussing *M.O. v. J.T.R.*, 85 A.3d

1058 (Pa.Super. 2014), and explaining that the "discrete and ancillary issue" in that case, whether the father needed to take off from work when exercising custody over the summer, "did not require the trial court to order any form of custody") (emphasis omitted).

Additionally, the language of § 5330 indicates that it applies in situations where a party learns that a criminal charge listed at § 5329(a) has been filed against an opposing party. In such situations, the party who is not facing the criminal charge may request a temporary or permanent custody modification. The trial court must hold a hearing "in an expeditious manner" to address that request and consider whether the party facing the criminal charge poses a risk of harm to the child. 23 Pa.C.S. § 5330(a). Here, § 5330 would apply only if it was Father who was seeking modification of the custody order and only if he sought modification because he discovered that there was a pending criminal charge against Mother.[6]

Although § 5329 and § 5330 did not apply to this case, our law required that the trial court render its decision in accordance with R.M.'s best interest. *See S.W.D.*, *supra* at 403 ("[I]n all matters affecting custody, the child's best interest is still paramount."). The record confirms that the court complied

---

[6] Father's belief that § 5330 outlines the risk evaluation required in § 5329 appears to derive from the language in § 5330(b) referencing "any request under subsection (a)[.]" 23 Pa.C.S. § 5330(b). Father apparently interprets this language as referring back to § 5329(a). To the contrary, this language refers to a request for modification under § 5330(a). The requirements for a risk evaluation under § 5329(a) appear in § 5329(c)-(e), quoted above.

with this requirement and took the possible safety risk to R.M. seriously. The court expressed sympathy for Father's concerns at the hearing on June 11, 2020. *See* N.T., 6/11/20, at 78 ("I don't have any doubt [Father] is going to be rightfully keeping an eye on things. . . . He just wants to be careful, to put it mildly. And so do I."). More significantly, the court included precautions in its order to protect R.M., directing that Boyfriend could not be present during Mother's overnight custody periods until August 2020 and thereafter could be present for only one overnight period during each of Mother's weekends. The court also directed that Boyfriend submit to two drug screens within ninety days of its order, the second of which would occur shortly after the start of these overnight periods, between late August and early September 2020. The court addressed R.M.'s safety in its opinion, as follows:

> The [c]ourt, most certainly, did not overlook or disregard its duty to ensure the minor child will be safe when she is in the limited presence of [Boyfriend]. Father failed to provide a crumb of evidence indicating [Boyfriend] poses a risk to the [c]hild at this moment. His sole focus was upon [Boyfriend's] past, bringing evidence of drug abuse from over two . . . years ago. [Boyfriend] is on probation. A condition of his probation requires him to be drug screened. All of his prior tests were negative. [Boyfriend] has not had any additional "run-ins" with the law since he quit using illegal drugs. The above-ordered phase-in schedule is created for the sole purpose of keeping the minor child safe, while giving her sufficient introduction time to become comfortable with [Boyfriend].

Trial Court Opinion, 9/15/20, at 7-8 (unnumbered pages). Thus, contrary to Father's contentions, the trial court properly considered whether Boyfriend poses a risk of harm to R.M.

- 11 -

As part of this initial argument, Father also challenges the trial court's determination that Boyfriend does not pose a risk of harm to R.M. Father's brief at 22-29. For the reasons explained below, no relief is due.

Essentially, Father asks this Court to reweigh the evidence in his favor. He summarizes the testimony presented at the hearing on June 11, 2020, and argues that Boyfriend's history of drug addiction, criminal history, and memory issues resulting from his brain surgery, render him an ongoing threat to R.M. Father's brief at 23-25. Father emphasizes Mother's testimony that Boyfriend was not receiving drug treatment and that she was not taking precautions to prevent him from relapsing. *Id*. at 25-29. He also underscores that Mother previously failed to comply with the court's order to produce certain documents. *Id*. at 26-28.

The trial court explained its decision as follows:

> This [c]ourt's order [entered June 12,] 2020, granted Mother's requested relief by allowing a phase-in schedule slowly introducing [Boyfriend] into the child's life. After several hours of receiving evidence and testimony, it was apparent [Boyfriend] does not pose a threat of harm to either Mother or the minor child. Mother, Father, and [Boyfriend] testified. The [c]ourt finds all parties to be credible witnesses.
>
> . . . Despite Father's reasonable parental reluctance for [Boyfriend] to be introduced into the custodial arena, this [c]ourt is confident an introduction of the minor child to [Boyfriend] is more than appropriate at this time, so long as Mother proceeds with the introduction in a slow, careful, and methodical manner. [Boyfriend] and Mother have been together for several years. [Boyfriend] is clean and drug-free for the past two . . . years. This [c]ourt believes it is time for Mother to move on with her relationship with him. She is capable of building a family with [Boyfriend] and the minor [c]hild, brick-by-brick. Currently,

- 12 -

Mother exercises her custodial time at Maternal Grandmother's house to ensure [Boyfriend] is not present. This [c]ourt finds the record failed to establish any grounds in which it can continue enforcing such a drastic limitation in Mother's life, who should be allowed to move forward with her life outside of Father. She has waited several years and abided by the prior [c]ourt [o]rder's provision keeping [Boyfriend] away from the minor child.

Trial Court Opinion, 9/15/20, at 5-6 (unnumbered pages) (emphasis omitted).

As this Court has often stated, credibility and weight of the evidence determinations are within the discretion of the trial court, and this Court must defer to those determinations when the record supports them. **V.B.**, **supra** at 1197. Here, Mother and Boyfriend testified that Boyfriend has remained drug-free, and the trial court accepted their testimony.[7] N.T., 6/11/20, at 9, 46-47. Father did not present any evidence to contradict that testimony or to suggest that Boyfriend posed a risk of harm to R.M. at the time of the hearing, but raised various speculative concerns that he might pose a risk in the future. He suggested that Boyfriend might relapse, that the aftereffects of his brain surgery might make him prone to violence due to a lack of impulse control, and that he might simply "flake out and disappear in two months." **Id**. at 58-62. The court was free to conclude under these circumstances that it would be in R.M.'s best interests to have a more normal familial relationship with Mother, including spending time at Mother's home, where Boyfriend resides. On these points, we must defer to the trial judge who viewed and assessed

---

[7] Boyfriend's only caveat was that he "might have had a beer with [his] dad" since he had been living with Mother. N.T., 6/11/20, at 47.

the witnesses first-hand. *V.B.*, *supra* at 1197. Further, we highlight that the court did not simply grant Boyfriend unfettered access to R.M. The court crafted an order that would introduce Boyfriend into R.M.'s life gradually, which included limiting his presence during overnight custody periods and mandating drug screens. We discern no abuse of discretion in the court's decision or its approach.

In his final claim, Father contends that the trial court erred in failing to consider R.M.'s well-reasoned preference pursuant to 23 Pa.C.S. § 5328(a)(7). Specifically, Father emphasizes that R.M. is flourishing in his primary physical custody and argues that the court "refused to hear testimony" from the child about her preference. Father's brief at 29-32.

The trial court addressed Father's claim in its opinion as follows:

> The child's comfort and emotional well-being were both considered when this Court determined to forego interviewing the minor child. She is very well-adjusted and incredibily successful in school. To submit her into the boiling water of her parent[s'] custody dispute, again, and question her about [Boyfriend] is contrary to the minor child's best interest. Furthermore, given the nature of why Father objects to his daughter being in the presence of [Boyfriend], the Court did not feel it was appropriate to ask a child about those issues. [Pa.R.C.P.] 1915.11 makes it clear the Court was not required to interview her. The Rule is permissive, not mandatory.

Trial Court Opinion, 9/15/20, at 8 (unnumbered pages).

The child custody law dictates that a trial court analyze a series of factors to determine a child's best interest when "ordering any form of custody[.]" 23 Pa.C.S. § 5328(a). This includes § 5328(a)(7), which requires

- 14 -

consideration of "[t]he well-reasoned preference of the child, based on the child's maturity and judgment." 23 Pa.C.S. § 5328(a)(7). As we discussed above, however, the trial court in this case was not ordering, or considering ordering, a form of custody. The court was resolving the discrete and ancillary issue of whether Boyfriend could be present during Mother's custody time. While the court was bound to base its decision on R.M.'s best interest, it was under no obligation to consider § 5328(a)(7). *See S.W.D.*, *supra* at 403 ("The failure to address all factors under 5328(a) did not constitute reversible error, because the trial court was not required to consider and apply all the § 5328(a) factors. In deciding that Child should attend West Hills Primary School, the trial court did not order a form of custody.").

Moreover, as the trial court observed in its opinion, our Rules of Civil Procedure provide that interviewing a child in a custody case is discretionary rather than mandatory:

> (b) The court may interview a child, whether or not the child is the subject of the action, in open court or in chambers. The interview shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys shall have the right to interview the child under the supervision of the court. The interview shall be part of the record.

Pa.R.C.P. 1915.11(b); *see also T.D. v. E.D.*, 194 A.3d 1119, 1125 (Pa.Super. 2018) ("[Rule] 1915.11(b) is discretionary and does not mandate that a trial court interview a child in a custody matter.").

It was well within the trial court's discretion to decline to interview R.M., given the sensitive information at issue in this case and the risk of embroiling

her unnecessarily in the parties' custody dispute. Notably, it appears doubtful that R.M. would have been able to contribute any relevant information even if the court had interviewed her. The purpose of the hearing was to determine whether Boyfriend could be present during Mother's custody time. R.M. had not seen Boyfriend in years, and there was no reason to believe that she would know whether he remained sober or posed a safety risk. Thus, Father's claim fails.

For all of the foregoing reasons, we conclude that the trial court did not abuse its discretion in permitting Boyfriend to be present during portions of Mother's custodial periods, with appropriate limitations. Accordingly, we affirm the court's June 12, 2020 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2021