J-S41001-18

2018 PA Super 235

| | | |
|---|---|---|
| T.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.D. | : | No. 515 EDA 2018 |

Appeal from the Order Entered January 25, 2018
in the Court of Common Pleas of Philadelphia County Family Court at
No(s): 0C1605792

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                **FILED AUGUST 28, 2018**

Appellant, T.D. ("Father"), appeals from the order entered on January 25, 2018, in the Philadelphia County Court of Common Pleas, denying Father's Petition to Modify Custody, in which he requested that the child, A.D. ("Child"), born in February 2009, be permitted to travel on an airplane between Philadelphia and Boston as an unaccompanied minor. Pursuant to a motion filed on June 14, 2018, Father further moves to suppress Mother's brief filed on June 8, 2018. After a careful review, we affirm the trial court's order and deny Father's motion to suppress Mother's brief.

The trial court summarized the relevant procedural and factual history as follows:

_____

* Former Justice specially assigned to the Superior Court.

J-S41001-18

## I. Procedural History (*See Docket*)

Father currently resides in Boston. E.D. ("Mother") and A.D. live in Philadelphia. Father and Mother entered into a final custody Order by agreement on September 19, 2016, granting them shared legal custody of A.D. Pursuant to the Order, Mother has primary physical custody, and Father has partial physical custody every other weekend. The Order also outlines custodial rights for holidays, summertime vacations, travel costs, etc. The clause at issue states: "If child is flying/traveling, he must be accompanied by parent and/or agreed upon third party (designee, au pair, babysitter) at that parent's expense." (Order dated September 19, 2016.) The Order goes on to state: "At ten years old, child may fly as an unaccompanied minor unless either parent files a timely petition to modify."

On April 17, 2017, Father filed a Petition to Modify Custody requesting that the court allow A.D. to fly to and from Boston and Philadelphia as an unaccompanied minor. No other issues were presented in the Petition. The court held a full hearing on January 25, 2018,[1] and denied Father's Petition. Father filed the instant notice of appeal and Pa.R.A.P. 1925(b) statement on February 14, 2018.[2]

## II. Facts

The parties began their relationship in Boston. Father has resided in Boston since July 2009 and has lived in the Boston area since 1999. Mother moved to Philadelphia toward the end of 2008.

The flight time between Boston and Philadelphia is approximately one hour. When visiting A.D. every other weekend over the past eight years, Father would fly from Boston on Friday

---

[1] Both Father and Mother were present and represented by counsel. Each also testified on their own behalf.

[2] Father filed a Petition for Reconsideration on February 6, 2018. This petition was not ruled upon by the trial court and is deemed denied. **See** Pa.R.C.P. 1930.2(b) ("A party aggrieved by the decision of the court may file a motion for reconsideration in accordance with Pa.R.A.P 1701(b)(3). If the court does not grant the motion for reconsideration within the time permitted, the time for filing a notice of appeal will run as if the motion for reconsideration had never been presented to the court.").

- 2 -

and arrive in Philadelphia at approximately 7:00 – 8:00 p.m. He would then go to Mother's house, pick up A.D., and spend the weekend with A.D. at a hotel. The weekends in Philadelphia are often filled with extracurricular and other activities, with a portion of the time spent watching movies in the hotel room. On Sunday evening, Father drops off A.D. at Mother's house and flies back to Boston. Father testified that, in the time he has been flying to and from Philadelphia, only one flight has been diverted, and no flight has been cancelled. Occasionally, flights have been delayed, but by no more than thirty minutes.

Father believes it would be unfeasible for him to fly to Philadelphia and accompany A.D. on a flight back to Boston on Friday evening, only to turn around and accompany A.D. back to Philadelphia on Sunday evening and return to Boston the same night.

The parties agree that A.D. has been on numerous flights, both nationally and internationally. Both parties would be agreeable to a babysitter or designated third party accompanying A.D. on an airplane to and from Boston, but Father testified that the third party would have to be "vetted."

Father and Mother have concerns about A.D. flying as an unaccompanied minor. But Mother is opposed to the child flying as an unaccompanied minor at age eight, and Father believes the child can fly as an unaccompanied minor at age eight. Father reached this conclusion after reviewing airline procedures, talking to people who are responsible for operating those programs, and talking to other parents who have allowed their children to fly as an unaccompanied minor. Father maintains his belief that A.D. is mature enough to fly as an unaccompanied minor because of A.D.'s well-mannered demeanor around adults, his behavior on airplanes, and his lack of fear of flying.

Mother is opposed to A.D. flying as an unaccompanied minor because she is concerned for A.D.'s safety and does not believe he is sufficiently mature. Mother is concerned about A.D. talking to strangers due to his sociable and trusting disposition. In addition, she testified about a turbulent flight she and A.D. took that made A.D. feel scared and nervous; Mother said A.D. did not share this anecdote with Father. In the many times A.D. has flown with Father, Mother has never received any communications from Father about A.D. having any issues. Mother stated that A.D. enjoys spending time with Father but does not want to travel alone because he is scared.

Trial Court Opinion ("T.C.O."), 3/16/18, at 1-4 (citations to record omitted) (footnotes omitted).

On appeal, Father raises the following issues for our review:

1. Did the trial court abuse its discretion and err as a matter of law by determining that the child need not be interviewed by the [c]ourt at the January 25, 2018, hearing?

2. Did the trial court abuse its discretion and err as a matter of law and fact by precluding testimony about the unaccompanied minor protocols set forth by various airlines as contained in the exhibits and admitted into evidence at the hearing?

3. Did the trial court abuse its discretion and err as a matter of law and fact by failing to consider testimony and evidence regarding security measures for unaccompanied minors such as seat assignments, flight attendant assignments, call button protocols, protocols for flight changes, cancellations, scheduling irregularities, identification requirements, and phone call availability while in flight?[3]

4. Did the trial court abuse its discretion and err as a matter of law and fact when it considered evidence that was not part of the record and not necessarily accurate, such as protocols for an in-flight disaster and that the child would be sitting with strangers (possibly a registered sex offender)?

5. Did the trial court abuse its discretion and err as a matter of law and fact when it made findings that were not supported by record evidence and reached conclusions that were unreasonable based upon the evidence presented?[4]

Father's Brief at 4 (footnotes omitted).

_____

[3] The trial court addressed Father's second and third issues together as it found them interrelated. T.C.O. at 5 n.5. Further, Father addresses these issues together in his brief. Father's Brief at 4 n.1.

[4] Father addresses his fourth and fifth issues together in his brief. Father's Brief at 4 n.2.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A.

§§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted). *See*

*E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015).

This Court consistently has held:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (quotation

omitted). In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
> (1) Shared physical custody.
> (2) Primary physical custody.
> (3) Partial physical custody.
> (4) Sole physical custody.
> (5) Supervised physical custody.
> (6) Shared legal custody.
> (7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider in doing so. ***See E.D. v. M.P.***, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011); 23 Pa.C.S.A. § 5328(a) (listing the factors).

However, we have clarified that the factors set forth by Section 5328(a) are not required to be addressed where an order merely deals with a discrete and distinct issue. ***S.W.D. v. S.A.R.***, 96 A.3d 396 (Pa.Super. 2014).

It is also true that resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the § 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times- like here- these items may appear as independent, discrete issues advanced by motion or petition that does not require a change in the form of custody. Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the § 5328(a) factors.

*Id.* at 403. *See M.O. v. J.T.R.*, 85 A.3d 1058, 1062-63 (Pa.Super. 2014) ("Because the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the children's best interest.").[5]

Before we address Father's issues on the merits, however, we first address his motion to suppress Mother's brief. Father argues that Mother's brief not only fails to comply with Pennsylvania Rule of Appellate Procedure 2185(2), as well as a specific order of this Court as to timeliness, but should be "entirely suppressed from this Court's consideration in this matter because the brief fails to materially comply with the Pennsylvania Rules of Appellate Procedure, specifically, but not limited to, 2101; 2119(a) and (b); 2119(c),

_____

[5] Instantly, the trial court determined that Father's petition raised only a discrete issue, not requiring examination of the Section 5328(a) custody factors. T.C.O. at 6. This determination was not challenged by either party in the court below or on appeal.

- 7 -

and 2132(a) and (b) and prejudices [his] ability to even ascertain, let alone verify, the statements within the brief." Application to Suppress Appellee's Brief, 6/14/18, at 3-4, ¶¶12, 17. He asserts that Mother filed her brief seventeen days after the May 23, 2018, deadline set by this Court pursuant to Mother's request for an extension;[6] failed to cite to any legal authority and/or to the record within her argument and discussion; and included exhibits that were not part of the record. *Id.* at 1-3, ¶¶4-17.

While we note with disapproval the untimeliness of Mother's brief and the lack of citation to legal authority within her brief,[7] we decline Father's motion to suppress. We observe that Mother's brief, although filed after May 23, 2017, was, nonetheless, filed prior to the matter being assigned to a panel on June 25, 2018. Moreover, Father filed a reply to Mother's brief on June 15, 2018, also before the matter was assigned to a panel. Further, although

---

[6] Pursuant to order dated May 15, 2018, in granting Mother's request for an extension of time to file a brief, this Court stated, in part, "**Absolutely no further extensions shall be granted.** Indeed, the Prothonotary of this Court is directed to assign this appeal to a panel of this court without further notice if appellee's brief is not properly filed by **May 23, 2018**." Order, 5/15/18 (emphasis in original).

[7] *See* Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed…."); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa.Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.")).

deficient in some instances, Mother's brief does, in fact, provide substantial citation to the record with her argument and discussion. Notwithstanding, we disregard the exhibits appended to Mother's brief, as they are not part of the certified record. *See Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa.Super. 2006) (*en banc*) (noting that an appellate court may only consider that which is in the certified record).

Turning now to Father's issues on appeal, with his first issue, Father argues that the trial court erred in not interviewing Child with regard to flying as an unaccompanied minor. Father's Brief at 13-17.

As to the interview of a child, Pennsylvania Rule of Civil Procedure 1915.11(b) is discretionary and does not mandate that a trial court interview a child in a custody matter. Pa.R.C.P. 1915.11(b). Likewise, Pennsylvania Rule of Civil Procedure 1915.11(c) does not mandate a child's attendance at a custody hearing. Rule 1915.11 provides, in relevant part:

> Rule 1915.11. Appointment of Attorney for Child. Interview of Child. Attendance of Child at Hearing or Conference
>
> . . .
>
> (b) The court **may** interview a child, whether or not the child is the subject of the action, in open court or in chambers. The interview shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys shall have the right to interview the child under the supervision of the court. The interview shall be part of the record.
>
> (c) Unless otherwise directed by the court, the child who is the subject of the action shall not be required to attend a hearing before the court or a conference.

Pa.R.C.P. No. 1915.11(b), (c) (emphasis added).

In determining that it was contrary to Child's best interest to fly as an unaccompanied minor and there was no abuse of discretion in declining to interview Child, the trial court reasoned:

> Considering the factors relevant to the issue of whether it would be in A.D.'s best interest to fly as an unaccompanied minor, the court found that it was in A.D.'s best interest to keep the underlying Order intact. The record is devoid of any competent evidence showing that A.D.'s flying as an unaccompanied minor would further his best interest. Rather, Father's evidence was probative of his own desire to spend more time with A.D. in Boston, as well as Father's grievances regarding the inconveniences of traveling to and from Philadelphia….

> . . .

> The weight afforded to the child's preference as to the custodial parent in the context of a custody proceeding varies with the age, maturity, and intelligence of that child, together with the reasons given for the preference. [**B.C.S. v. J.A.S.**], 994 A.2d 600 (Pa.Super. 2010); [**Gianvito v. Gianvito**], 975 A.2d 1164 (Pa.Super. 2009). Here, both parties were able to paint a vivid picture of A.D. and discuss A.D.'s level of maturity….

> The record clearly indicates that Father and Mother love A.D. and enjoy spending time with him, and both parties were able to eloquently articulate their wishes and concerns during the hearing….

> Based on the testimony presented, the court stated it assumed A.D. would have said that he wanted to fly to Boston as an unaccompanied minor and that he was mature enough to do so. N.T. p. 72, l. 24 – p. 73, l. 2. However, the "well-reasoned preference of the child" pursuant to 23 Pa.C.S.[A.] § 5328(a)(7) is *not* an controlling factor, particularly in an situation where a child has expressed a desire that was determined not to be in his best interest. [**Altus-Baumhor v. Baumhor**], 595 A.2d 1147, 1150 (Pa.Super. 1991). In its rationale, the court stated:

>> []I find that it is not in [A.D.]'s best interest to fly as an unaccompanied minor **because of safety concerns**. He is eight years old. He cannot handle a situation where a flight would be diverted. He cannot handle a situation where he could be sitting on a tarmac by himself.

- 10 -

> If there's an emergency on the flight, all of the flight attendants would be dispatched to care for **all** of the passengers on the flight and to handle the emergency....
>
> But this isn't about [A.D.] being ready. This is about [A.D.] being too young to be able to handle a situation and protect himself. I think that the very idea that we think that at age eight, a child can protect him or herself is dangerous and it's impractical. I think, Dad, you yourself said, 'I would be okay with a babysitter flying with my son, **as long as it's someone who is vetted**.' Your son would be on that flight with a complete stranger, surrounded by complete strangers.
>
> He could be sitting next to a sex offender, and neither of you would be aware of it.[]

N.T., p. 72, l. 14 - p. 73, l. 16 (emphasis added).

The decision not to interview A.D. was not an unreasoned one. The court determined that retrieving A.D. from school would not be in his best interest in light of the narrow scope of the issue.

There is no statutory rule or decision of law that requires a trial court to interview a child in a custody hearing. It is evident from a review of the testimony, the exhibits, and the memoranda submitted by counsel that the court was able to render the appropriate ruling in A.D.'s best interest based on the evidence presented. In addition, the Pennsylvania Rules of Civil Procedure read that the court *may* interview a child, whether or not the subject of the action, in open court or in chambers, and state that a child who is the subject of an action for custody, partial custody, or visitation is *not* required to attend a hearing before the court or a conference, unless otherwise directed by the court. Pa.R.C.P. 1915.11(b) and (c) (emphasis added). The plain language of Rule 1915.11 makes interviewing a child in a custody proceeding *optional*.

In prioritizing a child's best interest, there are several instances that would warrant keeping a child away from court when the child's participation is not necessary. The stress and emotion involved in coming to court to testify, even for an adult, particularly about situations involving children and their parents, could have an adverse effect on a child. Placing a child in a position of feeling like he or she has to choose or opine on even a

discrete custody matter could aggravate relationships to the detriment of the child's best interest. "[T]he presence of a child in court is not always necessary or desirable. The experience may be traumatic and disruptive. Consequently, the child should not be required to attend a hearing or conference in every case." *See* Domestic Relations Committee Explanatory Comment to Pa.R.C.P. 1915.11 (1991).

The court, furthermore, finds the case of [**Bovard v. Baker**], 775 A.2d 835 (Pa.Super. 2001) to be distinguishable….

The circumstances in the present case differ from those in [**Bovard**]. [**Bovard**] involved an entire custody determination of *four* children, the youngest of whom was ten years old. The present case involves a single eight-year-old child with no other siblings (who hypothetically may or may not have been able to accompany him on a flight). Moreover, the issue here was not whether the child preferred to live with a particular parent, nor did the issue here involve a ruling that would materially alter the current custody arrangement. On the contrary, the court here decided a discrete and narrow issue ancillary to an otherwise-undisputed custody arrangement pertaining to a single eight-year-old child.

It should be noted that several cases involving parties with shared legal custody who litigated issues that could alter their child's daily routine did not require testimony from the children at issue. [**See, e.g.**] [**Staub v. Staub**], 960 A.2d 848 (Pa.Super. 2008) (deciding between public and home schooling); [**Fox v. Garzilli**], 875 A.2d 1104 (Pa.Super. 2005) (ordering that the children attend school in the mother's school district); [**Dolan v. Dolan**], 548 A.2d 632 (Pa.Super. 1988) (deciding between public and private school).

The factual findings and the conclusions of law drawn by the court as a result of this hearing did not require the court to hear testimony from A.D. It was apparent that allowing A.D. to fly as an unaccompanied minor was not in A.D.'s best interest. As this issue is within the discretion of the trial court and not unreasonable in light of the evidence presented, no abuse of discretion occurred….

T.C.O. at 7-11 (some citations omitted).

Father, however, indicates that interviewing Child would have given the trial court a perspective into Child's physical appearance, as well as his maturity level and preference. Father's Brief at 13. Father observes that the court was obviously concerned with Child's physical appearance, in particular height and weight, related to his traveling as an unaccompanied minor, as the court inquired as to these details of Mother and Father. *Id.* at 14-15. Moreover, Father notes both Mother and Father testified as to Child's maturity level and preference, although each offered conflicting testimony. Father states:

> Although the court is not required to interview the child under Pa.R.C.P. 1915.11(b) and (c), in this situation, a simple interview of A.D. would have given the trial court an objective view of A.D.'s height and weight to better understand his perceived physical appearance. Further, A.D.'s wishes constitute an important factor that the trial court should have considered, while simultaneously gaining insight as to A.D.'s disputed maturity level.

*Id.* at 13. We disagree.

We conclude the trial court did not abuse its discretion in electing not to interview Child. The trial court's findings are supported by competent evidence of record, and it set forth ample reasons for its decision not to interview Child. *See* T.C.O. 7-11; *E.R.*, 129 A.3d at 527.

We next consider Father's remaining issues challenging the trial court's consideration of record evidence and inferences therefrom together as we find them interrelated.

The trial court made it clear that it reviewed the airline policies as to unaccompanied minors presented by Father, and the court acknowledged Father's testimony as to his research, experiences, and conversations. T.C.O. at 13-14. Finding it not currently in Child's best interest to fly as an unaccompanied minor, as supported by the evidence of record and reasonable inferences therefrom, the trial court stated:

> The record supports a reasonable inference that unexpected emergencies and safety concerns do exist in spite of airline protocols for unaccompanied minors. Although Father believes that the benefits of A.D.'s traveling to and from Boston (rather than Father traveling to and from Philadelphia) outweigh any potential risks or dangers of A.D. flying as an unaccompanied minor, the court must consider the evidence presented and may also consider other common-sense and real-world scenarios that may impact child safety. Father's unwavering faith and optimism in airline equipment and employees are supported neither by the record nor common sense. Any mechanical malfunctions, defects or inclement weather that could delay or re-route a flight, or worse, be life-threatening, are certainly within the realm of possibilities and are not uncommon on flights. Even assuming the flight attendants are well-versed regarding in-flight emergency procedures, they have several duties and are responsible for the safety of everyone on the airplane, not just A.D. In the event of a crisis, it is not feasible to believe airline employees would be able to provide adequate attention to A.D. amongst a frenzy of passengers, or be specifically designated to cater to A.D.'s well-being. Moreover, neither the individuals seated next to A.D., nor any other passenger on the airplane, can be "vetted" by Father or Mother – a process that Father himself would require before allowing A.D. to fly with a baby sitter or third party. N.T., p. 32, l. 24 – p. 33, l. 3. While Father would require the "vetting" of a babysitter or third party before that person could fly with A.D., he expressed no concern about a stranger – who could very well be a hardened criminal or pedophile – sitting on either side of A.D. on an airplane.
>
> Both parties testified extensively on direct examination and cross-examination, and answered questions asked by the court.

- 14 -

> While Father steadfastly believes his concerns are addressed by airline protocols, Mother clearly expressed concerns about the inherent dangers associated with A.D. flying as an unaccompanied minor. The court had a duty to assess whether allowing A.D. to fly as an unaccompanied minor would be in his best interest. In so doing, the court need not ignore concerns about safety and common sense dangers associated with a minor traveling alone. Based on the evidence presented, the court found no compelling reasons to modify the current custody Order. In hearing the testimony, the court made a factual determination and drew reasonable inferences from the evidence, and no abuse of discretion occurred.

T.C.O. at 14-15.

Father, however, asserts the trial court abused its discretion and erred when it failed to consider evidence of record, precluded testimony related to the evidence of record, and made findings contrary to the evidence of record.[8] Father's Brief at 17-20. Father contends, "Here, a plain reading of the evidence submitted by Father, specifically the six different airline policies on flying as an unaccompanied minor, show that the trial court's determinations were contrary to the evidence of record." *Id.* at 17.

Specifically, Father argues that the trial court misinterpreted American Airlines' ("AA") policy when it noted that Boston, Massachusetts was not on

---

[8] Father appears to abandon any claim as to preclusion of testimony within his actual argument, resulting in waiver. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa.Super. 2017). Moreover, we note the statement of counsel for Father, "Your Honor, I'd like to mark as exhibits and move into evidence the other airlines – what the policies are. And I don't mean to ask questions about the exhibits, but I'd like to have the exhibits marked and moved." Notes of Testimony ("N.T."), 1/25/18, at 30.

the list of approved cities for children eight-to fourteen-years-old to travel on connecting flights through.[9]  *Id.* at 17-18.  Further, Father suggests that the court's statement, "Even assuming the flight attendants are well-versed regarding in-flight procedures, they have several duties and are responsible for the safety of everyone on the airplane, not just A.D.,"[10] is speculation and not supported by the United Airlines ("UA") policy offered.  *Id.* at 18-19. Father asserts:

> The trial court's determination is clearly contrary to the evidence of record because the UA Policy alone is clear that flight attendants do have specific responsibilities regarding an unaccompanied minor on the flight.  There was no reason for the trial court to speculate as to the flight attendants' responsibilities when they are clear on the face of the UA Policy, as well as the other airline policies of record.

*Id.*  Additionally, Father challenges the court's statement, "In the event of a crisis, it is not feasible to believe airline employees would be able to provide adequate attention to A.D. amongst a frenzy of passengers, or be specifically designated to cater to A.D.'s well-being."[11]  *Id.* at 19-20.  Father looks to the

---

[9] Upon review, the court's statement in its Opinion of AA's unaccompanied minor policy, T.C.O. at 13 n.6., appears to be an accurate restatement of the policy. *See* Exhibit 1.  Moreover, there is nothing to suggest that the trial court misinterpreted or misapplied it in any way.

[10] This is stated by the trial court in its Opinion and noted in the section quoted above.  T.C.O. at 14.

[11] This is stated by the trial court in its Opinion and noted in the section quoted above.  T.C.O. at 14-15.

policies of JetBlue and Southwest Airlines ("Southwest") as to seating, boarding, and rules and/or instructions. ***Id.***

Lastly, Father further argues that the trial court erred when it considered evidence that was not part of the record and made findings based on this non-record evidence. Father's Brief at 20-23. Father opposes the trial court's utilization of "real-world scenarios" in place of evidence of record. ***Id.*** at 21. He states:

> The case law is clear, and, like in [***Ney v. Ney***, 917 A.2d 863, 866 (Pa.Super. 2007)],[12] the trial court cannot transpose independently created 'real-world scenarios' for evidence that the parties entered on the record. Despite this, the trial court made at least two improper determinations based on 'real-world scenarios' that the trial court considered rather than from the evidence of record.

***Id.*** Specifically, Father highlights the trial court's statement, "Any mechanical malfunctions, defects, or inclement weather that could delay or re-route a flight, or worse be life-threatening, are certainly within the realm of possibilities and are not uncommon on flights."[13] ***Id.*** at 21-22. He recounts his testimony of only experiencing one diversion in his time flying between Boston and Philadelphia, and Southwest's policy where it references

---

[12] ***Ney*** involved a child support matter where the trial court improperly considered evidence obtained from its own internet research as to employment availability. ***Ney***, 917 A.2d at 866-67.

[13] This is stated by the trial court in its Opinion and noted in the section quoted above. T.C.O. at 14.

availability to answer telephone calls due to flight irregularity. *Id.* at 22. Father also points to the court's indications that the child could be seated next to a criminal or a sex offender.[14] *Id.* Father asserts,

> [T]here are infinite situations in which A.D. could be in proximity to a sex offender, pedophile, or 'hardened criminal', such as anytime A.D. is in a public setting (i.e., a movie theater). It is improper for the trial court to use this possibility as a factor in making this determination, especially because the airline policies directly address where an unaccompanied minor sits on the plane and neither party submitted this as a concern for this situation.

*Id.* at 22-23.

Upon review, we find no abuse of discretion. The trial court engaged in a detailed analysis of Child's best interest as it relates to flying as an unaccompanied minor. Its findings are supported by competent evidence of record, and its conclusions are not the result of an error of law or unreasonable. *E.R.*, 129 A.3d at 527; *C.R.F.*, 45 A.3d at 443. As such, we do not disturb them.

We observe that, while Father recounted only one diversion, he admitted occasional delays, although not over thirty minutes, with regard to his travel between Boston and Philadelphia. N.T. at 30. Further, only the Southwest policy indicates that they "will not transport [unaccompanied minors] on flights that may be diverted or cancelled due to inclement weather or other

---

[14] This is stated by the trial court on the record at the conclusion of the hearing, N.T. at 73, as well as in its Opinion and noted in the section quoted above, T.C.O. at 15.

occasional irregularities." Exhibit 6 at 1. In addition, the Southwest policy, while indicating that a flight attendant will check on an unaccompanied minor "periodically" during a flight, specifically provides that this is "as duties allow," and that a flight attendant "will not continuously monitor" an unaccompanied minor. Exhibit 6 at 2. Although the UA policy provides similarly for periodic check, *see* Exhibit 2 at 3, the other policies are silent as to the flight process. Moreover, despite several policies addressing recommended or preferred seating in general terms, only JetBlue provides for specific seating for unaccompanied minors. *See* Exhibit 3 at 2. As such, the court's inferences, or reliance on "real-world scenarios" and/or "common sense," are reasonable in this case.

For the foregoing reasons, we affirm the order of the trial court and deny Father's motion to suppress Mother's brief.

Order affirmed. Father's motion to suppress Mother's brief denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/18

- 19 -