J-S27015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRITTANY BENTON-VITZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES BRONSON, JR. | : | No. 480 EDA 2025 |

Appeal from the Order Entered January 27, 2025
In the Court of Common Pleas of Wayne County
Civil Division at No: 2023-30036

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 29, 2025**

Brittany Benton-Vitz ("Mother") appeals from the January 27, 2025, order that modified the existing custody order and increased the partial physical custody award of James Bronson, Jr. ("Father") with respect to the parties' biological son, L.E.B.-V.B. ("Child"), born in November 2015. Upon review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record. The parties never married but were in a relationship until 2016, the first year of Child's life. *See* N.T., 11/13/24, at 65. Following their separation, Mother was largely responsible for the care of Child. *See id.* at 52. Father, however, exercised custody on alternating weekends. For

_____

[*] Former Justice specially assigned to the Superior Court.

approximately seven years, the parties co-parented Child without a formal custody order.

On January 24, 2023, Mother initiated this litigation by filing a custody petition that requested sole legal and primary physical custody, along with an emergency petition for special relief. By this time, the parties resided a driving distance of approximately five minutes from one another. Father was married for approximately two years and resided with J.B., his fifteen-year-old son from a former paramour, as well as his two stepchildren, ages fifteen and ten.[1] *See* N.T., 10/25/24, at 14-15. Mother was not married and did not cohabit with a roommate or romantic partner. N.T., 11/13/24, at 239.

In her emergency petition, Mother alleged, *inter alia*, that Father was engaging in "repeated and ongoing reckless and dangerous behavior" while caring for Child, including, but not limited to, driving a motor vehicle while intoxicated with Child as a passenger. Petition for Emergency Special Relief, 1/24/23, at ¶ 6. On January 24, 2023, the court granted Mother's emergency petition and awarded her primary physical custody and Father supervised physical custody as mutually agreed upon by the parties.

On February 6, 2023, Father filed a response denying Mother's allegations in the emergency petition. Father also filed a counterclaim for

---

[1] Father also shares a son with his wife, who was born in approximately August 2023. *See* N.T., 10/25/24, at 12, 16.

- 2 -

custody on February 22, 2023, wherein he requested shared legal and primary physical custody.

Thereafter, the court scheduled an evidentiary custody hearing for May 30, 2023. Prior to that hearing, Father filed a motion requesting that the court interview Child, then seven years old, *in camera* and Mother filed a response opposing the request. On May 24, 2023, the court denied Father's motion.

Ultimately, the parties settled their initial custody dispute without an evidentiary hearing. On October 4, 2023, they stipulated to the entry of a court-approved custody order ("existing custody order") that awarded them, *inter alia*, shared legal custody, Mother primary physical custody, and Father partial physical custody every Thursday from 3:00 p.m. to 6:00 p.m. and on alternating weekends from Friday at 4:00 p.m. until Sunday at 4:00 p.m.

On May 15, 2024, Father filed the subject petition to modify the existing custody order. Therein, he requested that the court increase his partial physical custody on a rotating basis that would include first having custody of Child on Thursdays at 3:00 p.m. until Fridays at 5:00 p.m., and, in the week that immediately follows on Thursdays at 3:00 p.m. until Sundays at 4:00 p.m. *See* Petition for Modification, 5/15/24, at ¶ 6. On August 6, 2024, Mother filed a counter-petition to modify custody wherein she requested that the court eliminate Father's physical custody on Thursdays altogether. *See* Counter Petition for Modification, 8/6/24, at ¶ 3.

The court scheduled an evidentiary hearing for August 9, 2024, to occur before a custody hearing officer. **See** Pa.R.C.P. 1915.4-2 (Partial Custody. Office Conference. Hearing Record. Exceptions. Order.) ("The hearing shall be conducted by a hearing officer who must be a lawyer, and a record shall be made of the testimony."). Prior to the start of the hearing, on August 7, 2024, Father filed a motion requesting that the court interview Child, then eight years old, *in camera*. The certified docket reveals that the motion was served upon counsel for Mother the same day. The court granted Father's request, and the hearing officer interviewed Child *in camera* on August 9, 2024, outside the presence of the parties' counsel. Child testified that he enjoys living with Father and spending time with J.B., his older half-brother, and his two stepbrothers. **See** N.T., 8/9/24, at 9-13, 16-20. He further testified that he would like to spend "a little bit more" time with Father. **Id.** at 24. Specifically, he informed the hearing officer that he preferred to have three overnights with Father instead of two. **See id.** at 25.

The hearing continued on October 25, 2024, during which Father testified with respect to his custody request. Specifically, Father testified that his Thursday custody periods are hectic because they try to "cram so [many] things" into a small amount of time. **See** N.T., 10/25/24, at 17-18. Thus, Father wished to extend his Thursday afternoon custody time to overnights in the week one/week two schedule described above. To that end, Father

testified that he has a flexible work schedule because he is self-employed as a construction contractor and owns an archery shop.[2] *See id.* at 23-24.

Father further stated that, in the last year, Mother has not expressed any concerns with how he cares for Child. *See id.* at 72. Indeed, Father described the routine he has established with Child including, *inter alia*, completing his school assignments and having dinner. *See id.* at 17-20. Father also confirmed that Child enjoys spending time with J.B., his older half-brother, and his two older stepbrothers. *See id.* at 33-35. Overall, Father believed an increase in his partial physical custody would provide more stability for Child. *See id.* at 17-20.

Finally, Father categorically denied ever physically, sexually, or emotionally abusing Mother. *See id* at 183. He testified that Mother never filed a Protection from Abuse ("PFA") petition against him, and he has never been investigated by children and youth services. *See id.* at 71-72.

The hearing was continued and concluded on November 13, 2024. However, on October 31, 2024, Mother filed a motion seeking to present the expert testimony of licensed clinical social worker, Jessica L. Mitschele. Specifically, Mother asserted that Ms. Mitschele would testify, *inter alia*, about why the custody hearing officer should not have interviewed Child *in camera*

_____

[2] During the subject hearing, Father also requested physical custody of Child when Mother, who works as a speech pathologist for the school district Child attends, has to attend "in-service" days. N.T., 10/25/24, at 62-63; N.T., 11/13/24, at 8-9.

and the potential negative effect upon Child by requiring him to testify and altering the existing custody schedule. Following oral argument, the court denied Mother's motion.

During the final day of the custody hearing, Mother alleged that Father has abused her on various occasions. *See* N.T., 11/13/24, at 59. She testified that Father raped her in 2018 and choked her and forced her to kiss him in 2022. *See id.* at 59-62. She stated that she did not report these incidents, seek medical attention, or file a PFA petition because she was afraid. *See id.* at 61-63.

Mother testified that she sought to reduce Father's physical custody primarily because she asserted that Father endangers Child. *See id.* at 65-67, 253. Specifically, she testified that in 2021, Father drove Child to her residence in a "side by side ATV," and, in the unspecified past, he did not put Child in a booster seat when transporting him and drove while intoxicated while Child was a passenger. *Id.* at 65-67, 244.

On November 26, 2024, the custody hearing officer filed her report and recommendation wherein she set forth a summary of the parties' testimony and analyzed the 23 Pa.C.S.A. § 5328(a) custody factors. The hearing officer maintained the parties' shared legal custody and Mother's award of primary physical custody. Further, the hearing officer recommended increasing Father's partial physical custody, as follows.

> 4. Father shall have [] partial physical custody of the minor child as follows:

i. Every Thursday after school or 3:00 p.m., if there is no school until Friday at the start of school. Father shall return the minor child to school either on the bus or via car. If there is no school Father shall return the minor child to Mother at 8:30 a.m. unless it is his weekend;

ii. Every other weekend, from Thursday after school or 3:00 p.m., if there is no school, until Monday at the start of school. Father shall return the minor child to school either on the bus or via car. If there is no school, Father shall return the minor child to Mother at 8:30 a.m.

iii. Father shall have custody of the minor child during teacher in service days and Act 80 days while Mother is at school.

Report and Recommendation, 11/26/24, at 24-25 (unpaginated).

On December 12, 2024, Mother filed exceptions to the report and recommendation. Following oral argument before the trial court, by order dated January 27, 2025, and entered January 28, 2025, the court denied Mother's exceptions and approved the hearing officer's report and recommendation.

On February 14, 2025, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On March 4, 2025, the trial court submitted a Rule 1925(a)(2)(ii) opinion.

On appeal, Mother asserts the following issues for our review:

1. Did the trial court violate Mother's due process rights and err as a matter of law in issuing an *ex parte* order granting Father's [motion] to have the parties' then-eight-year-old son testify

when the trial court did not provide Mother with any opportunity to oppose the motion and granted it without considering any relevant factors, despite the fact that the trial court previously denied a similar motion by Father to have Child testify after Mother raised concerns regarding the adverse emotional impact such testimony would have on Child?

2. Did the trial court err as a matter of law in placing determinative weight on Child's preference to spend more time with Father when Child was only eight years old when he testified, did not provide any reasons in support of his wish to spend more time with Father, and his testimony focused on the fun things he does at Father's rather than on any parental care Father provides?

3. Did the trial court err as a matter of law in precluding expert testimony of a licensed clinical social worker and mental health therapist that would have called into question the stated preferences of an 8-year-old boy like Child and provided insight on the impact of changing the custody schedule when this testimony would have given important context to Child's testimony and given the trial court important additional information to consider regarding Child's best interest?

4. Did the trial court err as a matter of law in failing to find that custody factors 2, 2.2, and 15 favor Mother, and in failing to give these factors the substantial weight required and apply 23 Pa.C.S.A. §§ 5323(e) and 5328(a.1), when Mother presented uncontradicted testimony that Father sexually and physically abused her and that the counseling she sought was to help her recover from the trauma associated with this abuse?

Mother's Brief at 8-9 (reordered for ease of disposition).

Our standard and scope of review in this context is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

> In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up) (citations omitted). "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

In her first issue, Mother contends that the court violated her guarantee of due process under the Fourteenth Amendment to the U.S. Constitution when it granted Father's motion to interview Child *in camera*. **See** Mother's Brief at 36. Specifically, Mother argues that the court did not allow her the opportunity to respond to Father's motion before ruling upon it. **See id.** at 36-37; **see In re J.N.F.**, 887 A.2d 775, 781 (Pa. Super. 2005) ("Due process requires nothing more than adequate notice, an opportunity to be heard, and

the chance to defend oneself in an impartial tribunal having jurisdiction over the matter.").

In addition, Mother argues that the court failed to consider relevant factors when deciding to interview Child *in camera*, including whether the interview was "necessary and appropriate." Mother's Brief at 43. Mother emphasizes that the court previously denied Father's request for Child's interview during a proceeding in 2023, at which time she similarly opposed it alleging that it would have an adverse impact upon Child. ***See id.*** at 41.

With respect to the court's authority to interview a child *in camera* during a custody hearing, Mother asserts that Pa.R.C.P. 1915.11(b) (Appointing Child's Attorney. Child Interview. Child Attending Proceedings) does not allow the court to compel a child's testimony through an *ex parte* order. Further, Mother contends that, while Pa.R.C.P. 1915.13 (Special Relief) permits trial courts to grant special relief, she suggests that this rule does not apply to the issue at bar. ***See id.*** at 38-41. For the reasons that follow, we conclude that Mother has waived this claim.

Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. ***See*** Pa.R.A.P. 302(a). This Court has emphasized the need to raise claims at the earliest opportunity possible, as follows:

> On appeal, we will not consider assignments of error that were not brought to the tribunal's attention **at a time at which the error could have been corrected** or the alleged prejudice could have been mitigated. ***Tindall v. Friedman***, 970 A.2d 1159, 1174 (Pa. Super. 2009). "In this jurisdiction one must object to errors, improprieties or

> irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." ***Id.*** (quoting ***Thompson v. Thompson***, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation omitted)).
>
> ***State Farm Mutual v. Dill***, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) (emphasis added).

***Interest of T.M.***, 239 A.3d 193, 201 (Pa. Super. 2020).

In the case *sub judice*, during the second day of the hearing on October 25, 2024, after Child's interview already had occurred, Mother's counsel stated that "we filed an [a]nswer in [o]pposition" to Father's request for the *in camera* interview. N.T., 10/25/24, at 9. However, there is no indication in the certified record that counsel filed this pleading. ***See Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) ("The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal."). Instead, the record shows that Mother's counsel was served with Father's motion the day it was filed, August 7, 2024. Mother then brought Child to testify on August 9, 2024, and provided the hearing officer a list of questions to ask Child. ***See*** N.T., 1/27/25, at 8, 11. Nothing in the certified record suggests that Mother opposed Child's interview or objected to the procedure utilized by the court in granting Father's request until October 25, 2024, when Mother attempted to introduce her expert witness. ***See*** N.T., 10/25/24, at 9. Even then, Mother was merely arguing that the court should allow her to present expert testimony to discredit Child's testimony. ***See id.***

Based upon the foregoing, we conclude that Mother waived her due process claims by failing to present a timely objection.

Even if not waived, Mother is not afforded relief. In its Rule 1925(a) opinion, the court reasoned that it was within its discretion to interview Child pursuant to Pa.R.C.P. 1915.11(b)(1) ("The court may interview a child in open court or in chambers."). **See** Trial Court Opinion, 3/4/25, at 2. This Court has stated that "while Rule 1915.11 provides the trial court with the option of whether to interview the child, its decision is still subject to our review for an abuse of discretion." **E.C.S. v. M.C.S.**, 256 A.3d 449, 457 (Pa. Super. 2021). We discern no error or abuse of discretion.

The court determined that obtaining Child's preference, which had not previously been heard by the court, would aid in examining Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment. **See** 23 Pa.C.S.A. § 5328(a)(7). While Mother takes issue with the specific procedure the trial court utilized in making its decision, it was within the trial court's purview to interview the then eight-year-old Child. **See** Pa.R.C.P. 1915.11(b). There is no indication in the certified record that the trial court's decision was unreasonable.

Moreover, this Court has cautioned trial courts against declining to interview a child where a party explicitly makes a request in a case involving a material change of a custody award. **See E.C.S**, 256 A.3d at 457 ("[W]hen a party explicitly requests the interview, in a case involving a substantive

- 12 -

custody award or a material change from the custody arrangement, the court runs the risk of abusing its discretion when it declines to interview the child.").

To the extent Mother relies on **T.D. v. E.D.**, 194 A.3d 1119 (Pa. Super. 2018), we find the conditions in that case dissimilar to the case at bar. In **T.D.**, the trial court was examining a "discrete and narrow issue ancillary to an otherwise-undisputed custody arrangement. . . ." **Id.** at 1127 (determining that the trial court did not abuse its discretion when it declined to interview an eight-year-old child about flying as an unaccompanied minor). Here, Father petitioned to increase his partial physical custody, and Mother filed a counter-petition seeking to decrease his physical custody allotment. Thus, even if Mother had not waived this claim for failing to present a timely objection to Child's *in camera* interview, we would conclude that she is not entitled to relief.

In her second issue, Mother claims that the case "turned on Child's testimony and his stated preference to spend more time with Father." Mother's Brief at 56. Citing two different pages in the record, Mother asserts that the hearing officer "made it clear" during the hearing that Father should get more time based on Child's testimony. **Id.** Mother also contends that because the custody hearing officer found four factors favored her and four favored Father, "one can reasonably conclude that it was Child's testimony that was the deciding factor[.]" **Id.** at 57. Mother concludes that Child's preference should not have been given "such weight in this case" because

Child "exhibited some initial confusion regarding the truthfulness of his testimony[.]" *Id.*

Mother's citations to the record principally directs this Court to a singular page in Mother's motion to allow an expert witness to testify and a singular page from the January 27, 2025 oral argument regarding Mother's exceptions to the hearing officer's report and recommendation. Mother fails to cite to anything during the hearing that indicates the hearing officer "made it clear" that Father should get more time based on Child's testimony. Accordingly, Mother's contention amounts to little more than speculation.

Finally, while Child displayed some initial confusion at the outset of the *in camera* interview, there is no indication that Child was dishonest with the custody hearing officer, and Mother makes no such claim. Because the trial court is responsible for which factors are most salient and there is no indication that the trial court placed undue emphasis on Section 5328(a)(7), Mother's second issue fails. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." (citation omitted)).

In her third issue, Mother contends that the trial court erred by precluding Ms. Mitschele from providing the expert testimony described above. *See* Mother's Brief at 59-60. Mother asserts that the court should have allowed Ms. Mitschele to testify because it would have given the court "important context to Child's testimony and . . . important additional

information to consider in deciding whether a change in the schedule of a young child who thrives on routine and consistency[,] would serve [his] best interest." *Id.* at 60. We disagree.

"The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *B.K. v. J.K.*, 823 A.2d 987, 991-992 (Pa. Super. 2003) (citation omitted).

In its Rule 1925(a) opinion, the trial court emphasized that Mother only sought an expert after Child had testified. *See* Trial Court Opinion, 3/4/2025, at 2-3. The court further stated that after considering Mother's motion, Father's opposition, and oral argument, it determined that the proffered testimony by Mother's expert was not relevant. *See id.* at 3. Finally, the court reiterated that consideration of a child's preference, while not controlling, is an important factor that must be considered. *Id.* We discern no error or abuse of discretion.

In the instant case, Ms. Mitschele never met Child. Further, Mother only sought to introduce the testimony of Ms. Mitschele after Child had testified on August 9, 2024. As aptly stated by the trial court, "Mother made it clear in her motion that she wanted to offer Ms. Mitschele's testimony because she was concerned that the [h]earing [o]fficer was placing 'great emphasis' on the [C]hild's preference during the course of the [hearing]." Trial Court Opinion,

3/4/25, at 3; *see also* Motion to Allow Expert Testimony, 10/31/24, at ¶16 ("During [the hearing], it appeared evident to counsel for [Mother] that the [h]earing [o]fficer was placing great emphasis on the preference of the eight-year-old minor child."). As discussed *supra*, there is no evidence in the certified record to support Mother's contentions. Because the decision to preclude Ms. Mitschele from testifying was not unreasonable, we discern no error or abuse of discretion by the trial court. Consequently, Mother's third issue merits no relief.

Mother's final claim asks this Court to review the hearing officer's examination of Section 5328(a)(2), (2.2), and (15). *See* Mother's Brief at 45-54. As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." *Rogowski*, 291 A.3d at 61 (internal citation and quotation omitted). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5328(a). Specifically, the Custody Act sets forth a number of factors at Section 5338(a) that a court must consider prior to modifying an existing custody order. *See* *E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). Those factors are as follows:

> **§ 5328.  Factors to consider when awarding custody**
>
> **(a)  Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors

specified under paragraphs (1), (2), (2.1), and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be cause by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[3]  Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M.***

_____

[3] Our General Assembly enacted significant amendments to the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." ***Velasquez v. Miranda***, 321 A.3d 876, 886 n.6 (Pa. 2024); ***see*** 2024 Pa. Legis. Serv. Act 2024-8 (S.B. 55).  Specifically, Kayden's Law expands the factors to be considered in the custody court's best interest analysis by requiring the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child," which is defined as "the physical, emotional and psychological well-being of the child," and any "violent or assaultive behavior committed by a party." ***Id.***  In addition to new elements, our review of these amendments also reveals that the language of many of the factors have been substantively revised. ***See*** 23 Pa.C.S.A. § 5328(a)(1)-(2), (2.2)-(2.3), (4), (8).  Kayden's Law became effective on August 13, 2024, *i.e.*, a few days after the commencement of the subject trial in this matter.  Therefore, the hearing officer should not have considered the factors as amended. ***See C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (concluding that provisions of the Act apply "if the evidentiary proceeding commences on or after the effective
*(Footnote Continued Next Page)*

*v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original); *see also A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (citation omitted) (providing that trial courts shall set forth the mandatory assessment of the Section 5328(a) best interest factors "prior to the deadline by which a litigant must file a notice of appeal").

Instantly, the court approved the report and recommendation of the custody hearing officer by order dated January 27, 2025. This report weighed Section 5328(a)(2.3), (5), (6), (7), and (15) in favor of Father. *See* Report and Recommendation, 11/26/24, at 19-24 (unpaginated). Conversely, it found Section 5328(a)(3), (9), (10), and (14) in favor of Mother. *See id.* at 20-23 (unpaginated). Further, the report determined that Section 5328(a)(1), (4), (11), (12), (13), and (16) were neutral between the parties. *See id.* at 18-23 (unpaginated). Finally, the report found that Section

_____

date of the Act[.]"). However, as neither party raised this error, we decline to address it.

Our General Assembly further amended Section 5328(a) on June 30, 2025, with an effective date of August 29, 2025. *See* 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378). Since the subject proceeding concluded before the effective date, these amendments did not apply in this case. *See R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply revised version of statute in custody proceedings that concluded several months prior to the revisions taking legal effect).

5328(a)(2), (2.2), and (8) were not applicable.[4]  *See id.* at 18-21 (unpaginated).

Specifically, the hearing officer found critical Section 5328(a)(2.3), *i.e.*, which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child, as follows:

> During the testimony of the parties, it was very apparent that if given the opportunity, Father would be the parent that would encourage frequent and continuing contact between the parties. Father actually testified that he wished to purchase a phone so he could talk to Child while Child was with Mother, and Child could talk to Mother when he has custody.  It is this hearing officer's belief that if Mother was able, she would have Child have as little contact with Father as possible.  Father throughout all of his testimony never once hesitated in stating that Mother was a good mother.  Mother answered questions as if she was the only parent to Child and will be the only parent in the future.  Mother's own parenting plan lists Mother as making all decisions for Child except for religion.  Then her plan states, "[Child's] Mother should make all decisions and will notify Father after the fact."  This hearing officer finds Mother's disregard of Father to not be in Child's best interest.  Therefore, this factor weighs in favor of Father.

*Id.* at 19-20 (unpaginated) (cleaned up).

Mother contends in her final issue that the court erred in failing to weigh Section 5328(a)(2), (2.2), and (15) in her favor.  *See* Mother's Brief at 45.

---

[4] The hearing officer did not make explicit findings regarding Section 5328(a)(2.1).  Neither party has raised this error on appeal.  Further, based upon our review of the record, there is no evidence that this subsection is applicable in this case.  Nevertheless, we caution the trial court that it must address on the record or in a written opinion each of the requisite statutory factors in custody cases.  *See E.B.*, 209 A.3d at 460.

Mother recounts the incidents regarding alleged abuse perpetrated against her by Father and claims that her testimony was uncontradicted. *See id.* at 49-51. She further assails the court for not applying "safety conditions, restrictions or safeguards" pursuant to 23 Pa.C.S.A. § 5323(e)(1).[5]

_____

[5] **§ 5323. Award of Custody.**

. . .

**(e) *Safety conditions.***

**(1)** After considering the factors under sections 5328, 5329 (relating to consideration of criminal conviction), 5329.1 (relating to consideration of child abuse and involvement with protective services) and 5330 (relating to consideration of criminal charge), if the court finds a history of abuse of the child or a household member by a party or a present risk of harm to the child or an abused party and awards any form of custody to a party who committed the abuse or who has a household member who committed the abuse, the court shall include in the custody order:

**(i)** The safety conditions, restrictions or safeguards as reasonably necessary to protect the child or the abused party.

**(ii)** The reason for imposing the safety conditions, restrictions or safeguards, including an explanation why the safety conditions, restrictions or safeguards are in the best interest of the child or the abused party.

**(iii)** The reasons why unsupervised physical custody is in the best interest of the child if the court finds that past abuse was committed by a party.

. . .

23 Pa.C.S.A. § 5323(e).

Finally, Mother contends that the court erred in weighing Section 5328(a)(15), the mental and physical condition of a party or member of a party's household, in favor of Father. *See id.* at 53. Mother posits that pursuant to Section 5328(a.1) factors "under subsection (a) shall not be adversely weighed against a party if the circumstances related to the factor were in response to abuse. . . ." 23 Pa.C.S.A. § 5328(a.1); *see* Mother's Brief at 52-53. Mother argues that the court is "effectively penalizing [her] for going to therapy as a result of Father's abuse[.]" *Id.*

In determining that Section 5328(a)(2) and (2.2) were inapplicable and (15) favored Father, the court provided the following analysis:

> **Factor 2: The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.**
>
> Mother testified as to past abuse committed by Father on Mother. Mother alleges she was raped by Father in 2018. She testified that she never told anyone because she was embarrassed and had a sleeping baby. She wanted to maintain the peace and be a mother. She never went to the police or filed a PFA. Mother testified [that] in 2022, Father called her an entitled bitch then later put her in a choke hold and forced her to kiss him. Again, Mother never went to the police or filed a PFA. Mother testified that in 2021, Father drove Child in a side by side and from 2018-2022 [he used] Child as a messenger which she considers abuse. Mother testified that Father has committed emotional abuse in 2017 by using Child as a weapon that if she started seeing another man, he would take custody of Child. Mother testified that the note in Child's planner she considers abusive.
>
> Father testified to numerous charges including corruption of minor charge all which took place [in] 2005/2006 when he was in high school. He was 18 years old. Father took responsibility for

all of his actions which occurred 19 years ago. Father denies Mother's allegations.

It does not appear that any ongoing abuse or safety issues are present.

**2.2 Violent or assaultive behavior committed by a party.**

Same as Factor 2.

. . .

**Factor 15: The mental and physical condition of a party or member of a party's household.**

There was testimony that Father was taking medication for anxiety. Mother accused him of taking drugs, so he tapered off the anxiety medication. Mother testified that she began to see a counselor in 2021 to talk about past trauma and extremely stressful situations. Neither party presented evidence of a physical condition of a party or member of a party's household during the testimony. Therefore, Factor 15 weighs slightly in favor of Father.

Report and Recommendation, 11/26/24, at 18-19, 23-24 (cleaned up).

As to Section 5328(a)(2) and (2.2), the hearing officer's findings are supported by the record. Mother's claim that her allegations were uncontroverted is belied by the certified record. On cross examination, Father explicitly denied ever physically, sexually, or emotionally abusing Mother. *See* N.T., 10/25/24, at 183. We reiterate that we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. *See Rogowski*, 291 A.3d at 60-61. Thus, the hearing officer focused on the present and determined that Father did not present any safety issues toward Child and that Sections 5328(a)(2) and (2.2) were not

applicable. *See* Report and Recommendation, 11/26/24, at 19. We discern no abuse of discretion.

Relatedly, we disagree with Mother that the court abused its discretion by failing to impose safety conditions or restrictions pursuant to 23 Pa.C.S.A. § 5323(e)(1). Because Section 5323(e) is only triggered by a finding of "a history of abuse of the child or a household member by a party or a present risk of harm to the child or an abused party and awards any form of custody to a party who committed the abuse or who has a household member who committed the abuse," and the custody hearing officer found none, Section 5323(e)(1) is inapplicable in this case.

Regarding Section 5328(a)(15), the mental and physical condition of a party or member of a party's household, the court's findings are once again supported by the record. Father testified that he stopped taking his prescribed anxiety medication after Mother accused him of being a drug addict. *See* N.T., 10/25/24, at 147-148. He later stated that he tapered off the medication pursuant to his doctor's advice. *See id.* at 150-151. Further, Mother testified that she attends therapy due to past trauma and the contentiousness of co-parenting with Father. *See* N.T., 11/13/24, at 73. While not explicitly stated by the hearing officer, given its determination, she appears to credit Father's testimony denying Mother's allegations of abuse. Again, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. *See Rogowski*, 291 A.3d at 60-

- 24 -

61. Further, because the court determined that Father did not present any mental or physical conditions, it was reasonable for the court to weigh Section 5328(a)(15) slightly in favor of Father. Therefore, we discern no error.

Based upon the foregoing, we conclude that the trial court did not abuse its discretion by increasing Father's partial physical custody as set forth in the November 26, 2024, report and recommendation. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/29/2025